IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM F. SOSNA,

    Plaintiff,

vs.                       Case No. 10-2374-JTM

BANK OF AMERICA, N.A.,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff William Sosna alleges that in 2002 he entered into a line of credit agreement with Fleet National Bank which was secured by a mortgage on his home located in Roeland Park, Kansas. According to his Complaint, he sought relief under Chapter 7 of the Bankruptcy Act in 2005, and later defaulted on the Fleet Line Agreement in October, 2006. However, he alleges that he later entered into an agreement with Bank of America (BoA) to reinstate the original agreement.

His Complaint presents four claims. He alleges that BoA violated (Count 1) the Real Estate Settlement Procedures Act (RESPA); (Count 2) violated the Fair Credit Reporting Act (FCRA) and the Kansas Fair Credit Reporting Act (KFCRA) by reporting inaccurate credit

information about him; (Count 3) the Kansas Consumer Protection Act (KCPA); and (Count 4) the Fleet Line Agreement.

In its Motion to Dismiss, BoA argues that Sosna failed to present facts adequate to state a claim for relief, consistent with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, it argued that the KFCRA claim was preempted by federal law, that Sosna is not entitled to bring an action under the FCRA, and the KCPA claim is barred by the statute of limitations. Further, it argues that the KCPA claim is not plead with sufficient particularity, and that the fee disclosed in an agreement cannot be deceptive for purposes of the Act.

Following the bank's motion, Sosna moved to amend his complaint, and, arguing that the proposed amendment would moot the issues raised by the bank's motion, sought an extension of time to file any response to the Motion to Dismiss. This court found that the proposed Motion to Amend would not address all of the issues raised by the Motion to Dismiss, and accordingly stayed further briefing on that motion, directing the parties to complete briefing on the Motion to Dismiss. (Dkt. 10). The parties then filed, respectively, a Response (Dkt. 18) and Reply (Dkt. 21) on the Motion to Dismiss. In addition, Sosna has filed a Motion for Leave to File a Surreply (Dkt. 22), which the court will address at the conclusion of the present Order.

## 1. *The Reinstatement Agreement*

BoA first seeks dismissal on the grounds that Sosna fails to supply any particularized information concerning the alleged February, 2007 agreement under which the Fleet Line Agreement was reinstated. BoA argues that, in the absence of the details of what that reinstatement agreement contained, "[i]t is conceivable that the ... agreement ... could bar or limit Sosna's claims," or that "Sosna may not have complied with the terms of that reinstatement agreement; thus warranting dismissal of all of his claims." (Dkt. 11, at 4).

In the proposed Amended Complaint, plaintiff states that after the default, BoA sent him a letter dated February 22, 2007, which stated that he could reinstate his Fleet Line Agreement by paying $2,204.66 by March 8, 2007, that he subsequently paid the requested amount, and that the payment was accepted by BoA. The proposed Amended Complaint further alleges that BoA "recognized the reinstatement in a court filing filed with the Johnson County, Kansas District Court."

BoA complains that Sosna provides no identification of this Johnson County court filing by caption, or otherwise identify the terms of the alleged reinstatement.

While plaintiff might have supplied more specificity as to the reinstatement agreement in the proposed Amended Complaint and his Response to the Motion to

Dismiss, but at this piont, the court does not need such details, as the matter is not before the court for the determination of whether Sosna's claims as to the reinstatement agreement are convincing or credible. The plaintiff has directly alleged the existence of an agreement reinstating the line of credit agreement, has stated in general terms the timing of this agreement, and has stated that BoA has acknowledged the existence of this agreement. This is sufficient to withstand defendant's motion to dismiss.

## 2. RESPA

In its Motion to Dismiss, BoA argues that the Complaint advances the bare allegation of a "qualified written request," an essential element of a RESPA claim, 12 U.S.C. § 2605(d)(1), without any indication of the content or date of such requests, the relief he requested, and explanation of any resulting damages. BoA also argues that Sosna's failure to supply more specificity as to when the alleged violations occurred in 2007 render the claim potentially subject to RESPA's three year statute of limitations, as the present case was filed on July 27, 2010. It also stresses, in both its original Motion, and its Reply following the Sosna's proposed Motion to Amend, that the persistent use of the disclaimer "upon information and belief" in Sosna's pleadings fails to state well-pleaded facts that support a plausible claim for relief. Instead, it argues Sosna presents nothing more than the

4

"mere possibility" of misconduct by BoA, which is insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

However, the Amended Complaint has drastically reduced the assertions made "upon information and belief," (see Dkt. 14-1 at ¶ 51, 79), and, in contrast to the original Complaint, made additional, specific enumeration of his communications with BoA in connection with his RESPA claims.

In its Reply, BoA complains that the Amended Complaint fails to include these requests as attachments to show that they contain the information required for "qualified written requests" within the meaning of RESPA. Again, while the finder of fact may ultimately conclude from circumstantial evidence that plaintiff's claims of submitting qualified written requests are dubious and that such requests were in fact not made or were inadequate, the controlling point here is that the plaintiff has averred the existence of multiple requests which complied with the statute as to the information contained. (Dkt. 14-1, at ¶¶ 32-48). The plaintiff's allegations go beyond legal labels and conclusions, or opinions couched as facts, and instead are sufficiently definite to withstand defendant's Motion to Dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

*3. Fair Credit Reporting Acts*

BoA argues that the court should dismiss Sosna's Credit Reporting Act claims because, first, as to the state claim, the KFCRA is preempted expressly by the federal FCRA, 15 U.S.C. § 1681t(b)(1)(F), and second, only government officials can bring actions for violations of the duty created by the FCRA, 15 U.S.C. § 1681s-2(d). *Hasvold v. First USA Bank, N.A.*, 194 F.Supp.2d 1228, 1235 (D.Wyo. 2002); *Lowe v. Surpas Resource Corp.*, 253 F.Supp.2d 1209, 1253 (D. Kan. 2003).

The proposed Amended Complaint omits any claim of a violation of the KFCRA. The Amended Complaint includes a claim for a violation of the FCRA, however, and Sonsa argues in his Response to the Motion to Dismiss that he was damaged within the meaning of the FCRA by BoA's actions in accepting payments without applying it to principal, by the attempted collection of an additional $4000, but the resulting denial of credit with a national retailer, and by loss of sleep, nervousness, frustration, vexation, mental anguish, humiliation, embarrassment and mental distress. (Dkt. 18, at 15). The Response fails to directly address BoA's argument that no private right of action exists as to the FCRA claims advanced in the Amended Complaint.

In *Pinson v. Equifax Credit Info. Serv.*, 316 Fed.Appx. 744 (10th Cir. 2009), the Tenth Circuit addressed the ability of private parties to seek damages under the FCRA for breach of the duty to provide accurate information to credit reporting agencies. The court wrote:

> The Pinsons alleged that Capital One violated the FCRA by furnishing false and inaccurate information to the CRAs. The district court granted

6

Capital One's motion to dismiss **because the Pinsons failed to allege that any CRA had notified Capital One that its information was in dispute**. We agree with this disposition. The district court correctly recognized that the FCRA obligates furnishers of information like Capital One to provide accurate information to consumer reporting agencies, 15 U.S.C. § 1681s-2(a), and, upon receiving notice of a dispute from a CRA, to (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable, *751 id., § 1681s-2(b). As the district court explained, § 1681s-2(a) provides no private cause of action, *see Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1014 (9th Cir.2009) ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies."), while the duties listed in § 1681s-2(b) "arise only after the furnisher receives notice of a dispute from a CRA; *notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b),*" *id*. (emphasis added). Consequently, **because the amended complaint alleges only that the Pinsons — not any CRA — notified Capital One that its information was in dispute**, the Pinsons failed to state a claim against Capital One under the FCRA.

316 Fed.Appx. at 750-51 (italics in Pinson, bold emphasis added).

Unlike *Pinson*, the Amended Complaint in the present case directly alleges that Sosna contacted TransUnion, a credit reporting agency, on September 21, 2009, to request a reinvestigation (Dkt. 14-1, at ¶ 62), that TransUnion then notified BoA of the dispute (Id. at ¶ 63), and that TransUnion wrote to Sosna stating that BoA had verified the information date in the report. (Id. at ¶ 64). Thus, the Amended Complaint does allege a violation of § 1681s-2(b) in the failure to modify inaccurate information. The limitation of private rights

7

of action contained in § 1681s-2(d) is therefore inapplicable, and accordingly, the court will not dismiss plaintiff's private FCRA claim on the grounds asserted by the defendant.

*4. KCPA*

BoA argues that Sosna's KCPA claims are barred by the three-year statute of limitation applicable to such claims. K.S.A. 6-512(2). It notes that the present action was brought in July of 2010, but Sosna's Complaint explicitly charges that BoA failed to accurately credit his payments "beginning in April of 2007 and each month thereafter through February 2008." (Dkt. 1, ¶ 47). BoA argues that there is no discoverability provision under the KCPA, and thus no "continuing violation theory" under the Act. (Dkt. 21, at 6), and that, as a result, Sosna's KCPA claims are barred by the statute of limitations.

However, the cases cited by BoA merely establish that the KCPA's statute of limitations is not tolled until a violation is discoverable. *Four Seasons Apts v. AAA Glass Service.*, 37 Kan.App.2d 248, 152 P.3d 101, 104-105 (2007) (relevant statute "does not contain a discoverability provision"); *Thompson v. Jiffy Lube Internat'l.*, 505 F.Supp.2d 907y, 924 (D. Kan. 2007); *Johnsmeyer v. Hanover Dev. Co. II*, No. 93,158, 2005 WL 2495817, *3-4 (Kan. Ct. App. 2005) ("the discovery rule ... does not apply to the KCPA cases"). See also *Campbell v. Hubbard*, 41 Kan.App.2d 1, 7-8, 201 P.3d 702, 706 (2008).

The cases cited by BoA do not hold that separate violations occurring within the limitations period are not actionable. In fact, in *Thompson*, Judge Brown explicitly concluded that the plaintiff's "KCPA claims *that pre-date June 3, 2002* are barred. *Id*. at 926

(emphasis added). That is, the statute of limitations only acted to bar those KCPA claims that occurred more than three years prior to the lawsuit.

Under Kansas law, "a plaintiff may recover for each independent violation of the KCPA." *Feil v. MBNA America Bank*, 417 F.Supp.2d 1214, 1217 (D. Kan. 2006), *citing Dodson v. U-Needa Self Storage, LLC*, 32 Kan.App.2d 1213, 1220, 96 P.3d 667 (2004). Accordingly, the court holds that Sosna may not recover for any alleged violations of the KCPA which occurred more than three years prior to the filing of the present action. Alleged violations which occurred less than three years prior to the present action are not time-barred.

Next, BoA argues that Sosna's KCPA claims are not pled with any precision, noting that claims of deceptive practices under the KCPA must be presented with a level of particularity comparable to common law fraud claims. *See In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F.Supp.2d 1107, 1149-50 (D. Kan. 2003). It further argues that the Complaint's repeated allegation that certain events happened "upon information and belief," such as the claim that BoA failed to accurately credit his payments to his principal balance, fail to meet his burden under *Twombly*. And it argues, as to the $50 annual fee cited in ¶ 48 of Sosna's Complaint, that this fee was fully disclosed in the Fleet Line Agreement, and thus cannot form the basis for a claimed deceptive act. *See Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 687-88 (full disclosure of ticket fees precluded

claim for deceptive act in violation of consumer protection act); *Mancuso v. Rubin*, 52 A.D.3d 580, 583 (N.Y. 2008).

In his Response, Sosna argues that BoA failed to supply him any information about his balance or payoff amounts after October of 2006, that he wrote to BoA on Jule 11, 2008, March 2, 2009, April 3, 2009, and February 2, 2010 asking for information about the loan balance and payment history and no more $50 annual fees, but that BoA failed to timely acknowledge or respond to these requests. (Dkt. 18, at 18). As to the $50 annual fee, Sosna argues that the Agreement did disclose that a $50 annual fee could be imposed during the "Draw Period" of the loan, but that attempting to impose it outside this time was a deceptive practice.

The court finds that dismissal is appropriate as to Sosna's KCPA claims. The correspondence cited by Sosna was devoted to advancing claims that BoA "was violating the Fleet Line Agreement." (Dkt. 18, at 18). But Sosna has failed to advance any claims with particularity showing that BoA was in fact violating that Agreement.

Nothing in the original Agreement obligated BoA to prioritize his payments to his principal balance. In fact, the Agreement disclosed that the opposite would occur. Under ¶ 7(d) of the Fleet Agreement, payments "will be applied first to billed finance charges, then to any other charges that have not been treated as advances, then to advances accruing finance charge at preferred rates, then to all other advances, and finally to unbilled but

11

accrued finance charges." Under ¶ 7(a), "the minimum monthly payments will not reduce the amount of the principal outstanding."

As to the supposed violation of the Agreement by the imposition of the $50 annual fee, not only was this fully disclosed (as Sosna admits), it was equally disclosed that it could be imposed during the "Draw Period," which was explicitly defined in ¶ 1 to mean

> the time during the plan that you may request advances. The Draw Period begins the day after your right to rescind this Agreement expires and continues until the last day of the billing period ending during the 59th month after the month in which the Agreement is signed. At our option, we may renew the Draw Period for up to two additional five year periods. We will notify you before the end of any Draw Period whether or not we will renew your Draw Period. During any Draw Period, we do not have to make advances on the Account when your right to borrow has been suspended (See Section 18) or terminated (See Section 20).

The Agreement explicitly provided for what actually occurred, a suspension of the borrower's right to receive advances within a Draw Period. ¶ 18. By its explicit terms, this suspension did not end or terminate the Draw Period, and thus BoA was entitled under the Fleet Line Agreement to impose the $50 annual membership fee.

This leaves the $4000 charge allegedly imposed by BoA on Sosna, yet the proposed Amended Complaint is referenced directly only in ¶ 82, where it is asserted simply that BoA "further is attempting to collect nearly $4000 ... by [its] arbitrary increase of Plaintiff's Fleet Line Account Principal Balance." Notwithstanding BoA's vigorous argument that the original Complaint was devoid of specifics, and his own agreement that KCPA claims be

pled with particularity (Dkt. 18, at 18), the proposed Amended Complaint does nothing to describe BoA's alleged collection activities, the timing of those collection activities, the identity of the BoA employee who attempted to collect this charge, or the basis for his conclusion that BoA was not authorized to collect this sum.

## 5. *The Fleet Agreement*

BoA argues that Sosna's breach of contract claim, which asserts that it violated the Fleet Line Agreement, should be dismissed as the Complaint contains no explanation of what provisions in the Fleet Agreement were violated by BoA as to amounts improperly charged to or collected from Sosna. Sosna responds that the contract was breached by (a) the $4000 charge imposed on the account, (b) the attempted collection of the $50 annual fee, and (c) the failure to apply his payments to his principal balance. (Dkt. 18 at 19-20).

These alleged violations are addressed in the preceding section dealing with Sosna's KCPA claims, where it was found that the actions in violation of the Agreement in fact were and are consistent with its express terms, and accordingly, the court finds that Sosna's claims of breach of contract based on these alleged violations should be also dismissed. With respect to the alleged $4000 charge, the Amended Complaint supplies no allegation or explanation as to how the charge violated any provision contained in the Fleet Line Agreement.

As noted earlier, in addition to filing a separate Motion to Amend (Dkt. 14), a proposed Amended Complaint (Dkt. 14-1), and a Response to the Motion to Dismiss (Dkt. 18), Sosna has also filed a Motion for Leave to File a Surreply. This motion seeks leave to file an additional memorandum for putative reasons of supplying "previously un-cited authority" and to "correct inaccuracies" in BoA's Reply. (Dkt. 22, at 1). Neither justification supports the filing of a surreply, which by their very nature always attempt to correct the other side's arguments or supply additional authority. What is wholly absent from Sosna's request is any explanation as to why such additional authorities and arguments could not have been submitted in his original Response. As this court has noted, surreplies are heavily disfavored, *Johnson v. Roberts*, 721 F.Supp.2d 1017, 1021 (D. Kan. 2010), and are permitted only in "the most extraordinary circumstances." *Beckner v. Astrue*, No. 06-1012-JTM, 2007 WL 2013608, *1 (D. Kan. July 9, 2007). In the absence of any exceptional circumstances justifying the relief sought, the plaintiff's motion is denied.

IT IS ACCORDINGLY ORDERED this 21st day of March, 2011 that the plaintiff's Motion for Leave (Dkt. 22) is denied; plaintiff's Motion to Amend (Dkt. 14) is granted;

defendant's Motion to Dismiss (Dkt. 10) is granted such that the court hereby dismisses Counts 3 (alleging violation of the KCPA) and Count 4 (alleging breach of contract), but is otherwise denied.

<pre>
                                        s/ J. Thomas Marten
                                        J. THOMAS MARTEN, JUDGE
</pre>